Nall vs. Proctor.

---

CASE 15—AGREED CASE—OCTOBER 30.

## Nall vs. Proctor.

APPEAL FROM DAVIESS CIRCUIT COURT.

A person arresting a slave in a county bordering on a State where slavery is not allowed, when the slave has fled from his owner or person in possession not residing in a border county, is not entitled to the fee of $100 allowed by the act of March 3, 1860, unless he delivers the slave to the owner or person from whom he escaped, or to the jail of the county where the *owner* resides. A delivery by the taker-up to the jail of the county where the arrest is made, and by the jailer to the owner, will not entitle the taker-up to the compensation allowed by said act.

John H. McHenry & Son, for appellant, cited *Stanton's Rev. Stat., page* 372, *sec*, 3 ; *Ib., appendix, page* 809.

Wall & Ray, and Geo. H. Yeaman, for appellee, cited *act of March* 3, 1860, *session acts,* 1859–60, *page* 120.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The facts as agreed in this case are, in substance, that in July, 1860, Nall, being a resident of the county of Ohio, (which

is not a border county,) was the owner of a slave that ran away and was arrested by Proctor in the county of Daviess, which county borders on a State where slavery is not allowed; that Proctor lodged the slave, as a runaway, in the jail of Daviess county, telling the jailer to keep him there, and not to give him up until the fees were paid, whatever they were. That Nall afterwards applied to the jailer for the slave as his property, paid him twenty dollars, and thereupon the jailer delivered up the slave to the owner.

Upon these facts, and others not material to the question to be here decided, the circuit court rendered a judgment in favor of Proctor and against Nall for eighty dollars, in addition to the twenty dollars which had been paid to the jailer as stated, and from that judgment Nall has appealed.

By the Revised Statutes, (sec. 3, vol. 2, page 372,) it is provided, that the compensation for apprehending a runaway slave, where no larger amount has been offered as a reward, if arrested in any other county than that in which his master, or the person having the legal custody of him, resided at the time, shall be *twenty dollars*.

But a subsequent act of the legislature, regulating fees for arresting runaway slaves, approved March, 3d 1860, (*Appendix to vol. 2 Rev. Stat*,) provides, in substance, that the compensation for arresting such slave, where no larger amount has been offered, "when arrested in a county bordering on a State where slavery is not allowed, and said slave has fled from his owner or person in possession, not residing in a border county, and delivered to the owner or person from whom he or she escaped, or the jail of the county where the owner resides, one hundred dollars."

As already stated, the slave escaped from his owner who did not reside in a border county, and was arrested in a border county, and the case is therefore clearly embraced by the statute just referred to, provided its conditions and requirements shall have been substantially complied with by the party claiming the benefit of its provisions.

Has such compliance been show in this case? We think not.

To entitle the appellee to the compensation fixed by this provision of the statute it was his duty, upon arresting the runaway, to dispose of him in one of two ways : Either to deliver him to his owner, or the person from whom he escaped, or to "*the jail of the county where the owner resides*." By the plain and imperative terms of the law, the right to the compensation allowed is made to depend upon the performance of one or the other of these conditions. Of this there can be no doubt. But according to the facts agreed, the appellee, instead of delivering the slave to the owner, or to the jailer of the county in which the owner resided, committed him to the charge of the jailer of *Daviess* county, who was directed to keep the slave there, and not to give him up until the fees were paid, whatever they were.

But it is said that by the delivery of the slave to the jailer of Daviess county the latter thereby became the agent of the appellee, and that the subsequent delivery to the owner was, in effect, a delivery to him by the appellee. To tolerate such a construction of the statute would be to defeat its manifest policy and objects. Suppose the owner, in this case, had been a resident of Carter county, and that the taker-up, with a knowledge of this fact, had refused or failed to deliver the slave either to the owner, or to the jailer of the county where he resided, but had delivered him to the jailer of the county where the arrest was made, there to remain until the owner should there in person demand him, after incurring the expense, trouble, delay and hazard incident to these circumstances, can it be supposed that this would be such a delivery by the taker-up, through his agent, to the owner, as would entitle the former to the legal compensation? Yet the case supposed does not differ, in principle, from the actual case before us.

Whilst the act of 1860 greatly increases the compensation which had been previously allowed for the arrest of runaway slaves, in the cases provided for, it requires no unreasonable conditions or duties to be performed by the taker-up.

The judgment is therefore reversed, and the cause remanded with directions to dismiss the proceeding.